Before we begin our proceeding, I'd just like to, on behalf of the panel and our court, thank Suffolk University, their dean, and all their professors who have been so helpful with our staff in organizing this event. And thank you, of course, always to our wonderful staff. OK, ready to begin. First case for argument this morning is 21-2049, Arlton v. Aerovironment, Incorporated. How do you pronounce your last name? Pollack-Milgate. Good morning. Please begin when you're ready. Good morning. Good morning, Your Honor. And may it please the Court. I'm Deborah Pollack-Milgate on behalf of the Arltons. And I'd like to start with the SBIR statute today. It states that whenever practicable, the federal agencies and federal prime contractors shall issue, without further justification, phase three awards relating to the technology, including sole source awards to the recipients who developed the technology. That's the Arltons here. This appeal thus asks this court to confirm that the district court erred in determining that the government could immunize Aerovironment under 28 U.S.C. 1498 because, precisely because, the government was not obliged, was not obligated to contract with the Arltons company. So a lot of your argument seems dependent on really a bid protest or a contract type issue rather than the patent issue in 1498, correct? That is true for purposes of the Court of Federal Claims case. Yes, Your Honor. Yes, but the issue before us is slightly different, is it not? The issue is slightly different. The issue, so the question of phase three rights, first of all, under the SBIR is of the utmost importance to patent rights. But jumping right to the question of section 1498, the 1498 case law, which is not very much, but repeatedly focuses on the policy that the government is free to contract irrespective of private concerns of patent infringement. But no government policy is served by finding the government's consent to immunity and liability here. This policy simply doesn't apply. None of these justifications would exist. And discovery would show that and explain why the government ignored the law. But discovery was denied. The Arlton's... Counsel, what relief do you want from your environment that you cannot get from the government before the Court of Federal Claims? Well, with respect to this, we would like relief. The Arlton's would like relief with respect to, well, let me stand corrected. First of all, there's the question of the Mars helicopter specifically. Does the Arlton's position that that is not covered under Section 1498 because the government did not validly consent? But moving to Terry, which is the terrestrial version of the Mars helicopter. Why don't you give us a two-minute background about the technology and what's happening, what these contracts are about, because it's really quite interesting. Sure, absolutely. So this is technology that the Arlton's started back in 2005. They have about 50 patents. This one is directed to a rotary vehicle. The Mars helicopter specifically has a rotary system and a structural non-rotating mast. And in particular, the development shows and the record shows in this matter that the Aerovironment had a very primitive design, which was like a stick-like figure that didn't work at all. And so after the government actually went to Aerovironment to make this, they first started out looking at this stick-like figure and found that it wouldn't work. What happened instead is that the government, or we don't know because we don't know exactly what happened, but what we do know is that it ended up being the Arlton's technology that was flying on Mars. And the reason this is so important is that this is basically rights holders and SBIR across the country, they may be shocked to learn that the rights they thought they were guaranteed, technical developments, technological developments happen all the time. They thought they were guaranteed, and yet they do not prevent the government under this holding, under section 1498, from taking the technology, giving it to another, and then at their whim, immunizing their competitors. So that's the real issue that is here. But you say that your concern is they're immunizing the competitors, but going back to Judge Cunningham's question, the relief you see under the statute is that the government assumes or accepts liability for patent infringement, and that's a remedy that you can seek at the Court of Federal Claims, right? Theoretically, yes, Your Honor. The Arlton's have been and light has been before the Court of Federal Claims since 2018. And while in this instance, the government says, we consent, which includes, as Your Honor, I think just indicated, we accept liability, at the same time, they've moved to dismiss in the Court of Federal Claims. So the application of section 1498 under this circumstance, when we have the SBIR rights in play, ends up with these types of gains. But they're not moving to dismiss saying that you should instead get relief at the Federal District Court, correct? Your Honor, I cannot answer that question because for reasons that are not clear to us, the government has decided that that's all classified. And so I don't know, I don't have insight into the basis for their motion to dismiss. Okay. I was just gonna say, can you sum up though what relief you're seeking before the District Court that you cannot otherwise get from the government before the Court of Federal Claims? I just wanna make sure I have my hands around that. And I wanna, let me start with Terry because I haven't talked about Terry very much. So we have an issue now, which is the government says that with respect to certain uses of Terry, now after the fact, again, there was a summary judgment procedure, the government was nowhere to be found. Afterwards, they told this court, we consent to certain uses, we don't consent to others. So the District Court, however, relied on the fact that these were related issues and therefore immunized. Let me just, cause I know the time's gonna run out. I just want like a short answer, succinct answer to what relief you want from the District Court that you cannot get from the government before the Court of Federal Claims. Just go with that, give me a couple sentences. Sure. Short sentences too. With respect to the terrestrial vehicle, those uses, that's number one. So that's the relief. You're talking about Terry. Are you talking about Terry right now? Yes. Number two, with respect to the Mars helicopter, that that does not, there are, there's the royalty rate analysis that does apply in the Court of Federal Claims, but the patent statute damages do not. The Arletons would like a declaratory relief so that it is clear that this in fact was their invention as well as damages pursuant to the patent statute. And again, Your Honor. What damages pursuant to the patent statute? Isn't that why we have 1498? Because a scheme is created so that the government assumes liability when it's in contractual arrangements such as the one before us? Again, the case has been going on since 2018 and so far we're not past the pleading stage. And the application of section 1498 under these circumstances has produced an unjust result when there is absolutely no policy purpose that is served here by allowing the government to validate the statute. But you need to answer Judge Crow's question. She asked you a very specific question about what the statute does, 1498, and you're seeming to imply that you think you can get some additional relief before the district court. We need to know why you think that and what's your basis. 1498 does have a particular framework. There's no question about that. That is the framework for immunizing contractors. That is the framework. The Arletons are arguing, however, that that framework should not apply here so that they are able to pursue relief against the contractor in this case. And in particular, what I'd like to say as well, with Arleton's position is the problem here was really it was a rush to summary judgment. So we went straight to summary judgment without understanding the who, where, when, why of consent. And now we have the other problem compounded by Terry, which was used, flown around on national television by Anderson Cooper also having that use. So we have all of those issues. Yeah, a whole second round of summary judgment after Anderson Cooper. So it seems a little bit of a misnomer to say this was a rush to summary judgment. The discovery that was received after summary judgment the first time was quite limited. And one of the problems here we have is that we haven't had consistent facts from the defendant. It's been very difficult. Before Terry, the line from the government, or sorry, the line from the air environment was this is the only use. There are no other helicopters. That was the statement. That was what they told the court. That was what their client told the court. Then Terry comes to light. Then the next statement we hear from them opposing or in favor of summary, sorry, opposing the motion to vacate says, oh, the only use is for the government. Then he's deposed and all of a sudden there is a use that is not for the government at all. Have you appealed the fact that you apparently didn't get all the discovery you were seeking prior to the second entry of summary judgment? We, yes, we disputed the scope of discovery that the district court was allowed. Right, but is that before us? Is that on appeal, the scope of discovery? The shifting of the burden and the scope of discovery, yes, your honor, insofar as we've asked for summary judgment to be vacated and this is remanded back to the district court for discovery. But the judge, before he ultimately moved, had before him all of the evidence and the arguments you have with respect to these outside uses, like 60 minutes and the demonstrations and so forth. And he drew a conclusion with respect to those, that they weren't sufficient. That is the district court's conclusion and the problem with that conclusion now is that the government has, with respect to Terry again, your honor, that the government has contradicted what the district court concluded. And they've contradicted it by saying some uses are not immunized and we do not immunize those. And we'd like the federal circuit to tell us, or sorry, the district court, we want to go back and have the district court tell us what uses are immunized or not. The other problem was a faulty analysis with respect to de minimis. The court, the district court, found a de minimis, which required a commercial sale and that's not the law of this court. What's your best case for that? The best case for that is the Embrex case. I also think that the Mady case is also very clear on this point with respect to the experimental use. However, experimental use of de minimis, at least as far as we've been able to determine, should be on all fours. Can I ask you, before your time runs out, just on your motion to amend? Yes. Are you free, or were you free at that time, to just go ahead and file a new complaint with regard to trade secrets? Yes, your honor, I suppose so. So why didn't you do that? Because at the time, the Arletons were not interested in even more litigation, your honor. The place where we wanted to have all of these disputes was with respect to whatever patent claims we were going to hear, as well as the motion to amend. I would also say, your honor, that to the extent that there is ongoing trade secret infringement, that that would still be an option if there is the continuing wrong doctrine under the Defend Trade Secrets Act. In other words, you still have that option to seek a motion to amend, or to file a new complaint. That is something that we would consider and we would have to review. Did you tell the district court in your motion to amend about the problems you were having with the meeting and conferring, the timing of when the documents were produced, and the difficulty with sharing it with your client? Yes, your honor. We laid out the chronology very carefully. It came with, again, receiving the discovery on December 30th, being under confidentiality requirements, discovering trade secrets on January 31st. But you did explain all of that. Yes, we explained all of that to the court. Well, did you explain why, since you did it as you had the trade secret claims as of January 31st, according to you, you still waited another period of time to file your motion for leave to amend? Your honor, the process to be able to file a motion to leave to amend would have had to commence on January 8th, and by the time that the discovery. That's just leave without a motion, right? I thought there were two different deadlines. One deadline related to being able to file without a motion, right? I thought that was the January 8th deadline. And my understanding, there was a February 21st-ish deadline if you wanted to have a motion, like to move to amend the pleadings. Is that not true? This is all sort of part of the same process in California, which goes through a number of different steps in order to get to a hearing. So you have to notice the hearing a particular amount of time. Wait, wait, you haven't answered my question. My understanding is that there were two different deadlines, right? Is there one deadline in the schedule where you could move without a motion? I thought that was the January 8th deadline. Is that accurate? No, the one deadline to move to amend was the February 16th. 21st or something? Something right around there. Yes, that was the one deadline. Also, again, we were meeting and conferring up until we filed it right on March, I think March 22nd. So we moved, we were moving toward filing that every, along the way, according to the process that's permitted. Again, the Arletons could identify no case. But why didn't you file before the deadline? Your Honor, we were not able to. We didn't know about the claim until the 31st. The process we would have had in order to have the hearing on February 16th, because that's the hearing, was already, had already expired by the time that the Arletons learned of the trade secrets claim. But why not tell the court on February 1st, hey, we're not ready to file yet, but we've got a claim, we're meeting and conferring. We're gonna move as quickly as possible. Your Honor, that's not the process that we were aware of. We also did not have, the Arletons had no indication at that point in time or right away that this was going to be an issue with the defendants. Quite frankly, the schedule was so draconian in the way that it was applied by the district court that this is not something that the Arletons considered. Did you ever move to extend, Counselor, did you ever move to extend the deadline given the fact that you said you didn't think you had everything that you needed to file by the deadline that was in the schedule? Oh, we moved for leave to amend is what we did, Your Honor. But not to extend the deadline so that you could have some additional time, correct? We moved to amend, yeah, we moved for leave, Your Honor. Yes, you are correct. Okay, thank you. Can I ask you just one more quick question, which is in response to my earlier question where you could have gone and filed a new complaint with respect to the trade secrets, you said you didn't want to be involved in new and other litigation. But if the district court had allowed you to amend your complaint, you'd be in that position, right? Because he's reached a conclusion with respect to your other allegations, so now you'd be starting over with a new trade secret. So what would be the practical difference for you in terms of filing a new complaint or pursuing this as an amendment to the complaint? Your Honor, I do see I'm out of time. Go, please proceed, yeah, just ask. Yes, the difference would be not having this case in one context. The Arletons were interested in pursuing this together as one case. We were, the Arletons were looking for discovery that was pertinent to all of the facts, which they could only have if things were confined. Okay, thank you. We'll restore some rebuttal time. Thank you. Ms. Tan, good morning. You're representing the government here? That's correct. Good morning, Your Honors. And may it please the Court, Caroline Tan for the United States. Congress channeled patent infringement claims involving government contractors or subcontractors with the authorization or consent of the United States to the court's decision to remove    from the Court of Federal Claims. The question today is whether such authorization and consent exists for three set of circumstances at issue here. One, the use or manufacture of the Mars helicopter for NASA's Mars mission. Two, the use or manufacture of the Earth-based helicopter in performing anomaly tests for the Mars mission. And three, the use or manufacture of the Earth-based helicopter in certain educational and marketing activities. Which is Terry? What are we calling Terry? I'm calling two and three refer to Terry. Okay. Earth helicopter. Okay, can I just ask you, the other slide mentioned that your position now is that some of the uses are not immunized. Did you hear that? I did hear that, Your Honor. And is that your position? Because I thought we were operating here under the government saying that all of these other uses, everything was immunized, which is an important fact. Yes, absolutely. Everything with respect to the Mars helicopter falls within section 1498. And so that includes all manufacturers and uses involving the development and putting- Right, what about Terry? For Terry, the uses of Terry in performing anomaly tests and work related to the Mars mission to fall within to 1498. The educational and marketing activities, we take no position on the application of 1498 to that set of circumstances. But we do want to emphasize that 1498 does not categorically exclude these kinds of activities from 1498's protection. So how do we get that decided? Let's just keep this narrow thing, which is the uses that the government is not conceding or authorized. Those would take us out of 1498, would they not? So is your question, I mean, I think for purposes of what I'm calling category three, so it's uses of Terry involving certain educational and marketing activities. We, again, we take no position on the application of the statute to those uses, but we don't think that the mere fact that they involve marketing or educational activities categorically means that they're not a part of 1498. Well, is the government gonna go to the Court of Federal Claims when they're seeking relief under 1498? And is the government gonna say, no, we're not liable for those activities? I mean, this is like ping-ponging the plaintiff here. So we think that, I mean, I think it might be helpful to respond to your question with two particular points. The first is sort of the reasoning why we think that category three doesn't have to, isn't categorically precluded from 1498. And the second might be to respond to some of the questions you have about the parallel Court of Federal Claims litigation. As the first point, you know, we're looking at this Court's decision to deny or to recognize that there might be some circumstances in which activities are found to be part of the contract in other words, fall under section 1498. And we think that the only way is to disperse 1498 and disperse the other contracts. But while we're coming forward, we don't think this is a solution. Okay, I take all that. I'm very sorry, because we're running out of time. What I'm concerned about is that you won't say, I mean, you've kind of been reluctant or not willing to say here, that yes, those activities were authorized and are covered. So you're arguing here, yes, they very well might be, but that doesn't matter to me and it certainly doesn't matter to them. What matters to them is when they get to the Court of Federal Claims, are they gonna be able to capture whatever liability there is against someone? And unless you concede that those activities were authorized, then what makes them relevant with respect to that small bucket? So I can't say without, I don't even know who I'm supposed to discuss about this, but I think this issue is not a sufficient one. That's all I can say about that long list of possibilities. I can certainly say that's false. We did not sufficiently present the infringement with respect to the category that Judge Pearls was talking about. Or are you talking broader? Just can you be more specific? So I think it's false, but I'm not aware of the particular cases that Prince is bringing in that case. So it's not clear to me whether or not, I don't know whether or not they are brought into the case that he says, in that case, that they are a contradiction of privacy. I will say, since that is helpful, to provide brief points of view on how this is working, and why this is not working beautifully, but I can tell you about those brief points of view. One of the conversations we were having with the prison counselor was, they were complaining about there was a motion to dismiss that was pending before the court for the claims, and because of that, they were worried about not being able to get relief. And I think this kind of piggybacks off of some of what Judge Pearls was speaking to you about. What I want to understand is, I recognize that some aspects may be classified, but is there a pending motion to dismiss that will try to eliminate this smaller bucket of uses for, and prevent them from getting any kind of relief from any party, whether it's the government. I would say, whether they're getting any relief from the government, I'm sure it's like that. Okay, so there, this is here, I think it's seven minutes long. So I'll just read a little bit more. I hope that you can understand what's happening here. So, this is an authorization by the Department of Health and Human Relief, and it's on file against us in Virginia, and it's been held for most of this, for a number of years in Virginia. And I'm assuming it's also happening in this other case. What's the benefit of this authorization here? Does it encompass that bucket that Judge Pearls was talking to you about? It encompasses all of the use cases for us, and all of the use cases here that have caused the most problems, including a lot of our own cases, and the current ones in our category. And for example, the money, we're not going to be suspending the government for the purpose of supporting immigration profit. But if it doesn't, then there's a potential cause of action against the other party in the district court. It is not a surprise that this category of use cases is not one that is going to be given, or denied by the solicitation. But we think, I think the main important thing here is that those kinds of use cases are provided in some circumstances, perhaps it's not even important. And that's because the contract is performed on a criminal record, or a contract is agreed upon to be performed on a criminal record, and not on a misdemeanor case, and not on a contract. So for example, we can test the restriction that we have in the Congress of the 1498 selection. And that is used in some circumstances all within section 1498. So even if it's not directly against it, it's probably a contract for us. What about the Anderson Cooper situation? Would that fall within 1498 scope? I am not authorized to take a position on those particular uses that are alleged in this case. But again, what I can say is the mere fact that this is some kind of marketing or educational activity does not preclude 1498 from applying. But if the day after Anderson Cooper, they launched a product, Terry Jr. at Walmart, and sold it to consumers, the government's not accepting liability for that, correct? No, commercial profit would not qualify, and do not accept liability for cases involving commercial profit. I think we tried, in page 19 of our brief, we sort of set out the particular principles that could help this court in understanding the application of Category 3 to the provision here. But I think the governing sort of framework that this court has applied in understanding 1498 is whether or not this is the sort of thing that benefits the government, whether we want our contractors to be able to perform this sort of work without the burdens of patent litigation or the governing subject of law enforcement action. One other quick question. I know it's all classified. Do you have any sense that you can share with us in terms of when this court of claims proceeding might come to an end or some? I have no information on the timing of that particular case, Your Honor. All right, thank you. Thank you. Mr. Felda. I'm confused. Good morning. May it please the court. Scott Felder, representing Aerovironment. I think it's important to focus first on procedural posture of this case. This was a one-product complaint. Ingenuity was the only product of accused infringement. That was the subject of Aerovironment's summary judgment motion. What the Arletons are complaining of in part today is that the district court only reopened discovery following summary judgment for a limited purpose. The court doesn't have to address the other uses of Terry here in this decision in order to reaffirm or in order to affirm the district court's decision not to reopen the summary judgment in Aerovironment's favor on ingenuity. And as this court pointed out when my colleague was speaking, the Arletons could have filed another complaint related to Terry, just like they could have filed another complaint related to the alleged trade secrets appropriations. But maybe I've just got lost in this case, but my understanding was the summary judgment was in part predicated for these other uses. The district courts concluded that they were either de minimis or that they would come under the 1498 bucket, which would be adjudicated by the court of federal claims. Your honor, the original summary judgment, just to make sure that I'm very clear here, was ingenuity was made for the government with the government's authorization and consent. Ingenuity is the copter on Mars. That's correct, your honor. That's ingenuity is the copter on Mars. This whole discussion is on the Terry stuff, right? And 60 minutes and all that stuff. Right. So after the summary judgment hearing had concluded, after the judgment in Aerovironment's favor had been entered, there was a segment on 60 Minutes entitled Perseverance and Ingenuity about the Mars helicopter mission. During that segment, Aerovironment demonstrated Terry as a standard for ingenuity. It's very difficult to point to an aircraft on Mars and say this is how we achieve aircraft flight, first ever extraterrestrial aircraft flight. The district court looked at that against a question that my colleague alluded to during the summary judgment hearing. I think to be more specific about the question was, does Aerovironment have any plans to sell this product commercially? It wasn't, are there other uses? It wasn't, are there intents to, are there other aircraft? It was, does Aerovironment have intention to commercialize this product? The answer then, as it is today, was no. And so the district court said, we'll reopen the judgment. We'll give you limited discovery so you can explore whether that representation is correct. But if you can't show that there are substantial commercial uses, again, this is the case about ingenuity, I'm going to reenter summary judgment, and that's where we are today. What the cross appeals here ask this court to grapple with is the intersection between 20 U.S.C. 1498 and 35 U.S.C. 285. We have over a century of jurisprudence between the Supreme Court and this court, but section 1498 provides a party- Could you just talk about their motion to amend before you get into 285? I can, yes, absolutely. It seems like the district court was holding them to a pretty high standard of diligence. Shouldn't we have some concern about not incentivizing parties to bring claims before they're really ready to bring them? Your Honor, what I would say is the weight here demonstrates that they were not diligent. So in the Ninth Circuit, which is the law that would apply for a motion to amend after the deadline set by the court, which in this case was a deadline that the Arlington's themselves had proposed, requires satisfying the good cause standard of Rule 16, not the Rule 15 standard. The Arlington's themselves conceived the primary determinant of that is good cause. The primary determinant of good cause is diligence. The deadline here, again, the deadline that the Arlington's proposed originally was February 12th of 2021. They admit that they had discovered their trade secret claims by no later than January 31st of 2021. And then they entered into discussions with you to meet and confer and see if you would agree to an amendment and how this impacted your summary judgment motion. Isn't that behavior we want to encourage? It is, with one caveat, Your Honor. They didn't make that outreach until a week after the deadline to amend, at last. They didn't even approach our environmental- So had they come to you just one week earlier, we'd be in a completely different world? I think that the decision to wait even to approach our environment to amend, the decision not to approach us about an extension to the schedule, the decision not to seek legal court to amend the schedule, all demonstrate a lack of diligence. I can't really speak to what would be the height of that in the world if we weren't in that situation. I know you're maybe anxious to get to 285, but before you go there, can you tell me whether or not you're disputing whether Terry should be part of the case? Because when I was listening to some of what you were talking about with respect to the various summary judgment motions, you of course are focused on ingenuity, which I understand was part of the original case. Are you contesting in any way that Terry is not also part of that case? Terry was the basis for reopening the summary judgment on ingenuity. This court can avoid assessing any uses of Terry. By simply saying we are affirming the district court's decision not to reopen the case entirely, only to reopen it for limited purposes to see if there have been factored commercial uses of the single-accused product or its associated technology. I'm happy to discuss the various uses of Terry if this court would like. And I think the government is quite rightly not saying, we are not taking a position on any particular uses of Terry other than its manufacturing and its uses for audio-anomaly testing. And our environment's position is that if the court were to look at the uses of Terry outside of those contexts, that they are what the government characterizes in their brief as associated infringement. Things incidental to the work that was required on the issue. Yeah, but the problem for us, or for me at least, is that the government won't take a position. They won't say that the uses that we know of now were indeed consented to or authorized. And so it leaves the other side in never-never land. It's a small sliver of this case, but it seems to leave, if the government ends up taking a position at the Court of Federal Claims that, no, these uses were not authorized, then can they go back to the district court and say, uh-huh, we can file a claim there? It may not be successful, it may be far-fetched, but do they have the ability to go back to the district court? I do not necessarily know, Your Honor, that the broad immunity afforded to a contractor under Section 1498 is perfectly coextensive with a waiver of sovereign immunity. That would be the jurisdictional predicate of the Court of Federal Claims. Well, we'd hope it would be coextensive, right? I have argued that there are some gaps in previous motions, so I think it would be difficult for me to stand here and say they're not. I don't think, however, that any of those gaps are applicable to the fact pattern we have here today. So if we look, for example, at some of those uses of tariff, I've already spoken about 60 minutes, we can use the AUVSI trade show, where Terry was there at an exhibit, Flight on Mars. It's a standard for ingenuity. It is tied to the work that Air Department did for the United States and with the government's authorization and consent. And I see there's a couple of rebuttals. Yeah, move to 285. I'm sorry? Move to 285. Certainly, Your Honor. So the issue here, 285, is designed, in part, to deter litigation that is meritless or frivolous or otherwise exceptional, to be exceptional. And the standard of review, our standard of review? Abuse of discretion, Your Honor. And here, I think we want to juxtapose the deterrent purpose of 285 against the broad immunity that 1498 affords. And the reason that 1498 affords a broad immunity, again, essentially a jurisprudence from the Supreme Court and this Court, is that we don't want government contractors put off from doing work for the federal government by considerations of private patent infringement. And that's not just the liability. It's also the burden and expense of litigation, the very burden and expense that Air Department's had its shoulder here. This litigation, which accused ingenuity, which the complaint itself establishes the Arlington's knew was for the government. The complaint refers to what NASA did, what JPL did, in conjunction with Air Department. The contract provided the express authorization to consent for ingenuity is publicly available on the JPL website. They could have gone and seen that it contains the authorization consent clause. They could have gone and seen that that authorization consent clause flows down to every subcontract, even if it's not expressly included. Despite all that, as you know, the district court said it did not find this case easy, says it's not a slam dunk. And further, that the patent issues don't stand out from the rest, and this is not an exceptional case. How do we tell the district court it abused its discretion in making those findings? I think we would look rather at the Adjusted Camp case as an example. The Adjusted Camp case started as objective and weak. This Court's characterization of it on appeal. And after Markman became objectively faceless. Aircraft's position in this case started out objectively weak. The coverage of 1498 for ingenuity, the only accused product, quite clear. We made it clear fairly quickly thereafter. We pointed out the existence of 1498. We laid out the 1498 argument. At some point, there is a line that's crossing the case becomes exceptional. The Adjusted Camp case looks at when it became objectively meritless. Here, that line is no later than when the government filed a statement of interest saying, yes, in fact, we do accept liability for ingenuity. And that was after you filed your summary judgment motion? That was the day after we filed our summary judgment motion, Your Honor. Okay. Pursued beyond that point is pursuing an objectively meritless case. In the Adjusted Camp, this Court found that it was an abusive discretion for a district court not to award fees in that circumstance. Okay, thank you. Thank you, Your Honor. Thank you. Will we store four minutes of rebuttal? The other side to keep things even. Thank you, Your Honors. Just a few points on rebuttal. First of all, I would be remiss if I did not come back to the point with respect to what the district court concluded here. The district court concluded in its second summary judgment that the government was not obligated to contract with light. That is wrong as a matter of law. This has ping-ponged, this holding has ping-ponged back and forth between the Court of Federal Claims and this district court. And it's essential that the court correct this error with respect to the meaning of the SBIR statute. But you don't have any standing to raise issues with respect to light, right? I'm not sure exactly, wouldn't you need light to be a party or something to be able to have it raise those issues as opposed to Arlton's? So, the Arlton's did move to amend the complaint to actually add light and that was objected to by their requirement. But secondly, this is still first and foremost a question of patent infringement and a question under 1498. And the district court decided that because there were no contract rights, this is part of the holding, that section 1498 could apply. So that is a holding of the district court that needs to be aided. The second thing to point out is Error Environment's position that substantial commercial uses are the standard for de minimis. That is not the standard. The standard is, and this is something that the district courts have shown some confusion over, but so long as the act that we're talking about is in furtherance of the alleged infringer's legitimate business and is not solely for amusement to satisfy idle curiosity or very strictly philosophical inquiry, the act does not qualify for the very narrow and strictly limited experimental use defense. And again, That's 271, that's not 1498, is it? Have we ever said what the de minimis exception, if any, is under 1498? This is in connection with the Mady versus Duke case, and it is a section 1498 case. Is that our case? That is the federal circuit case. It's 307 F1351, and it's in the context of the experimental use, which I've understood, or we've understood in our briefing to be on all fours with de minimis, and it carries over some of those same cases. So that is there. And again, this is not, Terry, just to make sure that this is clear, is not in Arlton's view a small sliver. When you go on national television and talk about this is the greatest invention and that achievement, that is extraordinarily valuable from a commercial perspective, and that is a commercial benefit that has been lost to the Arltons, again and again, and of course, all of that is outlined in our brief. With respect to the motion to amend, I'd like to point out that from a procedural perspective, that if the Arltons had gone to file a complaint somewhere else, then Arrow-Vironment would have almost certainly moved to amend because it was compulsory in the pending case, in the current pending case, and then we would have gone back to the same group again with respect to good cause. So filing another case procedurally would not have been the prudent move from a procedural perspective at that time. Also to point out that with respect to the schedule, there was still six months approximately left of fact discovery here. There was no need, there was no prejudice, there was no need to move to have, to have the motion to amend denied when the procedural schedule was still in play. It was not at the end of the case. And then finally, with respect to the attorney's fees. Well, your time is up. My time is up. And if you respond, then the other side has the right to respond to what you say. So you might want to reconsider what you want to say about that. But it's your show. Will you allow me to finish my sentence on that? It's up to me to decide whether to do it. Your Honor, the defendant, or the appellee here, would have essentially a section, any time someone files a section 1498 as an affirmative defense, that that automatically renders this case exceptional. That's in essence what they've asked for. And that's not the law. Plaintiffs should still be free to pursue those crimes. Thank you. All right, we'll give you 30 seconds. Thank you, Your Honor. So I just want to pick up that very last point about the assertion of a 1498 case immediately making a case exceptional. That's not Erebach's position. Erebach's position is that this case is exceptional because the applicability of section 1498 was so clear. Again, their complaint says NASA did this, JPL did this. The contract provided express authorization and consent was publicly available. All that the Arletons contest is whether the government could validly give that authorization and consent. Setting aside the Siber argument, we outlined in our brief whether the Siber argument has multiple problems. Not at least... Okay, I'm going to cut you off because I don't want to do another ping-pong. That's fine. I just saw the yellow light. Thank you. Thank you, Your Honor. Thank you. We thank all sides. The case is submitted.